# In the United States Court of Federal Claims

No. 13-1014
Filed: April 11, 2024

---

JON SALTZMAN,

               *Plaintiff*,

v.

THE UNITED STATES,

               *Defendant*.

---

*Jon Saltzman*, Wickenburg, AZ, Pro Se.

*Laura W. Duncan*, Attorney of Record, USACE Galveston District Office of Counsel, Galveston, TX, *Todd Kim*, Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., and *Roy Fuller*, Office of Solicitor, U.S. Department of Interior, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

In *The Sun Also Rises*, Hemingway's character is asked how he went bankrupt; the now famous reply, "[g]radually, then suddenly"[1] is an equally apt characterization of pro se Plaintiff Jon Saltzman's ("Mr. Saltzman") Fifth Amendment takings claim that has languished in a state of administrative flux for over ten years. Mr. Saltzman's claim relates to the Mining Law of 1872 ("the Mining Law") which allowed individuals to explore and purchase land, as well as valuable mineral deposits on public land. Under the Mining Law, Mr. Saltzman became an unpatented placer mining claim holder of 103 individual 160-acre unpatented mining claims and paid the required accompanying fees. However, after the fee structure changed, Mr. Saltzman failed to pay the requisite fees and the Bureau of Land Management ("BLM") determined that Mr. Saltzman forfeited his mining claims.

Mr. Saltzman administratively challenged the fee change and forfeiture of his claims and also filed a Complaint in this Court seeking $219,733,270 as compensation for the alleged taking of his mining claims. Initially, the Court stayed the takings case while BLM and its appellate board within the Department of the Interior ("Interior") determined the validity of Mr.

---

[1] Ernest Hemingway, *The Sun Also Rises* (1926).

Saltzman's mining claims. Ultimately, Interior determined that all but 7 of Mr. Saltzman's claims were void.

Most recently, the United States moved to dismiss Mr. Saltzman's claims. First, the United States argues the Court lacks jurisdiction to hear Mr. Saltzman's claims because he holds no cognizable property interest in his placer mining claims. Second, the United States argues that Mr. Saltzman failed to allege facts that, even if true, entitle him to relief because the fee increase serves a legitimate public purpose and was reasonable. Despite the Court's sympathy for Mr. Saltzman's decade-long fight, and shared frustration with the prolonged administrative process, the Court agrees with the United States and **GRANTS** the Motion to Dismiss, (Def.'s Mot. to Dismiss, ECF No. 80).

## I.    BACKGROUND

### A.    Legal Background

The Mining Law, 30 U.S.C §§ 22–54, opened land and valuable mineral deposits in the United States for citizens to explore and purchase. *See Erhardt v. Boaro*, 113 U.S. 527, 535 (1885) (explaining the Mining Law grants "the right to extract and possess the mineral within certain prescribed limits."). A mining claim is a parcel of land where miners may assert a right of possession and extract minerals. *Mining Claims*, BLM, https://www.blm.gov/programs/energy-and-minerals/mining-and-minerals/locatable-minerals/mining-claims (last visited Apr. 1, 2024). Specifically, a placer mining claim[2] is a 20-acre plot where a claim holder may extract "all forms of deposit, excepting veins of quartz, or other rock in-place." *Id.*

The Mining Law recognizes two types of property rights: unpatented and patented. *See generally* 30 U.S.C §§ 22–54. Ownership of a valid unpatented mining claim confers a possessory right in the land, but not fee title. *Hoefler v. Babbit*, 952 F. Supp. 1448, 1452 n.1 (D. Ore. 1996) ("An unpatented claim is a possessory interest in land solely for the purpose of mining. The government or a private party may contest an unpatented claim. The claimant gets a fee simple interest from the United States in a patented claim, and no one can contest the claim.") (citing *Clouser v. Espy*, 42 F.3d 1522, 1525 n.2 (9th Cir. 1994) *cert. denied* 515 U.S. 1141 (1995)). Conversely, a patented mining claim results in fee title passing from the United States to the claim holder. *See id.*

Under the Mining Law, mining claim holders must comply with all statutory and regulatory requirements, including a claim maintenance fee for placer mining claims. 30 U.S.C § 28, 28f. Prior to 1993, claim holders were required to annually perform at least $100 worth of labor to maintain their claim. 30 U.S.C § 28. But in 1993 Congress passed the Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. § 1744, which removed the work requirement and implemented an annual fee requirement. *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66 §§ 10101-10106, 107 Stat. 312, 405-07 (Aug. 10, 1993) ("1993 Maintenance

---

[2] Placer mining involves separating valuable ore from surrounding material like eroded sand or dirt. *See* Placer Mines, Alaska Miners Ass'n, https://www.alaskaminers.org/placer-mines (last visited Apr. 11, 2024).

Fee Statute") (codified as amended at 30 U.S.C. §§ 28f-28k). The original annual fee for a placer mining claim was $100 but eventually increased to $140 in 2009.[3] *Id.*; Required Fees for Mining Claims or Sites, 74 Fed. Reg. 30, 30,959–61 (June 29, 2009). Failure to pay the maintenance fee constitutes forfeiture of the associated mining claim. 30 U.S.C. § 28i ("Failure to pay the claim maintenance fee or the location fee as required . . . shall conclusively constitute a forfeiture of the unpatented mining claim, mill or tunnel site by the claimant and the claim shall be deemed null and void by operation of law.").

In December 2011, Congress passed the 2012 Consolidated Appropriations Act, Pub. L. 112-74 § 430, 125 Stat. 786 (codified as amended at 30 U.S.C. § 28f(a)(2)) [hereinafter "2012 CAA"]. The 2012 CAA amended the maintenance fee statute so that each fee would apply "per 20-acre" rather than "per claim." *Id.* This effectively closed a loophole where an individual claim holder—like Mr. Saltzman—could hold a 160-acre plot but pay the same amount in annual fees as a claim holder with a 20-acre plot. In July 2012, BLM adopted a rule implementing this maintenance fee provision. Administration of Mining Claims and Sites, 77 Fed. Reg. 44,155 (July 27, 2012).

### B.    Factual Background

Mr. Saltzman resides in Wickenburg, Arizona, located northwest of Phoenix. (Compl. at 4, ECF No. 1). He has explored and prospected in the nearby Vulture Mining District, a historic gold mining area, since 2001.[4] (*Id.*). In 2005, Mr. Saltzman became an unpatented placer mining claim holder of 103 individual 160-acre unpatented mining claims—approximately 16,480 acres. (*Id.* at 7–8). In 2006, Mr. Saltzman filed a "Notice Plan, Occupancy Plan" which BLM approved in Phoenix, Arizona. (*Id.*). At the time, each mining claim had a $125 fee. (*Id.*); Location, Recording, and Maintenance of Mining Claims or Sites, 69 Fed. Reg. 40,294, 40,296 (July 1, 2004) (establishing $125 per claim maintenance fee). Mr. Saltzman continued to mine and submit his "Plan of Operations" with BLM until 2012. (Compl. at 5–6).

Notably, in 2009, BLM amended its rules so that an "association of persons" could aggregate their 20-acre parcels into one placer claim that may not exceed 160 acres for 8 or more locations. (*Id.* at 5); *Mining Claims*, BLM, https://www.blm.gov/programs/energy-and-minerals/mining-and-minerals/locatable-minerals/mining-claims (last visited Apr. 1, 2024) (still in effect). However, from 2009 to 2012, individuals like Mr. Saltzman could continue to pay a $140 fee for each claim—even if aggregated into a 160-acre plot. (Compl. at 5–6); 74 Fed. Reg. 30, 30,959–61 (addressing fee increase but does not disrupt "per claim" fee structure). Then Congress passed the 2012 CAA.

Due to the 2012 CAA's new fee structure—attaching the $140 fee "per 20-acre" rather than "per claim"—Mr. Saltzman's requisite fees increased from $14,420 to $115,360 per year.

---

[3] The fee was routinely reauthorized and periodically increased from 1993 until the present. (*See* Def.'s Mot. to Dismiss at 12–13 (collecting Federal regulations)).

[4] *Vulture City, Arizona*, BLM, https://www.blm.gov/blog/2022-04-07/vulture-city-arizona (last visited Apr. 9, 2024).

(Compl. at 7 (calculating fee payment increase)). Mr. Saltzman did not pay maintenance fees on 75 of his 103 mining claims. (*Id.* at 8–9). Consequently, BLM determined Mr. Saltzman forfeited those mining claims; he only maintained "560 cares or roughly less than 4 percent of the original project's placer claim acreage." (*Id.*). The decade-long administrative process and litigation described below ensued.

###### C.     Procedural History

Mr. Saltzman filed his Complaint with this Court in December 2013. (*See generally* Compl.). In February 2014, the United States moved to dismiss Mr. Saltzman's claims under RCFC 12(b)(6), arguing that Mr. Saltzman failed to state a claim because he did not have a property interest in "unchanged annual maintenance fees" for an unpatented placer mining claim on public lands. (ECF No. 5). However, the Court denied the motion explaining that Mr. Saltzman's alleged property interest was in his mining claims themselves, not the "set maintenance fee." *Saltzman v. United States*, No. 13-1014L, 2014 WL 4050181, at *1 (Fed. Cl. Aug. 15, 2014) ("Order Denying Dismissal"). The Court continued that Mr. Saltzman's claim was like those in *Kunkes*, where unpatented mining claim holders argued the initial $100 maintenance fee in 1993 constituted a taking. *Id.* at *3 (discussing *Kunkes v. United States*, 78 F.3d 1549, 1551–56 (Fed. Cir. 1996) ("*Kunkes*"), *aff'g* 32 Fed. Cl. 249 (1994)). Under *Kunkes*, the Court must determine whether the unpatented mining claims are "subject to 'objectively reasonable' fees" and whether those fees furthered a "legitimate public purpose." *Id.* at *3–4.

Additionally, the Court concluded it could not proceed until BLM determined title with respect to Mr. Saltzman's unpatented mining claims. *Best, et al. v. Humboldt Place Mining Co.*, 371 U.S. 334, 339–40 (1963) (holding that Congress gave BLM the right to "determine title" with respect to unpatented mining claims, before a takings claim can be reviewed in federal courts). Thus began a decade of delay. In April 2015, the Court stayed the case while BLM completed its validity determination of Mr. Saltzman's claims. (Order Granting Stay, ECF No. 31).[5] As detailed below, Mr. Saltzman's case remained stayed until September 2023, when the undersigned (assigned to the case in October 2022) ordered the United States to move for disposition after extensive discussions with the parties. (Order Lifting Stay, ECF No. 75).[6] In

---

[5] BLM estimated the validity determination process would take approximately "3 to 6 years." (Decl. of Matthew W. Shumaker, ECF No. 25-1).

[6] The Court discussed lifting the stay and moving to dispositive briefings at length with the parties. (Mar. 7, 2023 Tr. 7:21 (Mr. Saltzman: "We need some kind of movement"), 11:22–12:6 (United States: "the stay essentially protects Mr. Saltzman" because his claims relies on BLM's validity determination), ECF No. 70; Sept. 11, 2023 Tr. 11:12–15 (Mr. Saltzman: "Actually my cases have taken the oppositive of a priority. Example, one of the cases that's sitting up there, it was for three years, it was never assigned to a judge."), 25:23–26:2 (United States: "But we believe that we could move, at this time, for judgment on the pleadings without moving to a summary judgment and discovery phase, so just on the pleadings. But even if the facts that Mr. Saltzman says are true, they're still not sufficient to state a claim."), ECF No. 77).

October 2023, the United States moved to dismiss this case, (Def.'s Mot. to Dismiss);[7] Mr. Saltzman filed what the Court construes as his response in November 2023. (Pl.'s Resp., ECF No. 83).[8]

> D.    *Administrative Review History*

Before Mr. Saltzman filed in this Court, he appealed BLM's November 2012 forfeiture determination of 75 mining claims to the Interior Board of Land Appeals ("IBLA"). (Pl.'s Ex. 1, 7, ECF Nos. 1-2, 1-7). In September 2013, the IBLA affirmed BLM's determination explaining that the 2012 CAA "was not a fee adjustment" or increase, but rather a statutory change to how the maintenance fees were calculated. (Pl.'s Ex. 1 at 2–3). The IBLA also provided it did not have jurisdiction over constitutional violations but noted that the Supreme Court has determined there is no taking of private property when mining claims on public land are forfeited because of failure to pay requisite fees. (*Id.* (citing *United States v. Locke*, 471 U.S. 84, 108–09 (1985))). As stated above, the Court stayed proceedings while BLM examined whether Mr. Saltzman's claims were valid under the Mining Law. (*See generally* Order Granting Stay).

In June 2015, BLM began to examine the validity of Mr. Saltzman's mining claims using a three-phase process. (Def.'s June 1, 2015 Status Report at 2–3, ECF No. 32). In Phase I, BLM completed threshold claim adjudication to determine if Mr. Saltzman complied with state and local regulations for locating and recording his unpatented mining claims. (*Id.* at 3–4). If a claim was found to be defective, it would not proceed to Phase II. (*Id.*). In Phase II,[9] BLM completed

---

[7] Lifting the stay resulted in a flurry of motions. First, Mr. Saltzman moved to stay dismissal before the United States filed its dispositive motion. (Pl.'s Mot. to Stay Dismissal, ECF No. 79). On October 26, the United States moved to dismiss under RCFC 12(b)(1) and (c). (Def.'s Mot. to Dismiss). On November 14, Mr. Saltzman moved to withdraw his motion to stay or alternatively to extend his response to the United States' motion. (Pl.'s Mot. to Withdraw, ECF No. 82). Due to an administrative error, the Court did not receive Mr. Saltzman's motion, (*id.*), until he filed a cross-motion and response to the motion to dismiss on November 21. (Pl.'s Resp.).

[8] The Court construes Mr. Saltzman's self-styled "Plaintiff Saltzman Motion, Cross Motion and Objection to the United States Dispositive Motion for Dismissal[,]" (ECF No. 83), as a response because substantively the filing responded to the United States' Motion to Dismiss.

[9] BLM evaluates: (1) whether the minerals that the unpatented mining claim holder alleges he has discovered are locatable, and (2) if the minerals pass the "prudent person test," which states that the specific discovered deposits must be of such a character that "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine." *See Reaforce, Inc. v. United States*, 119 Fed. Cl. 1, 7 (2013). If BLM finds that there is no mineral discovery which would support valuable exploration and mining, BLM institutes "a mining contest" at BLM's Office of Hearings and Appeals. Those BLM decisions are reviewed by the IBLA, and then appealed to the district courts under the Administrative Procedure Act ("APA"). *See e.g.*, *Hoefler v. Babbitt*,

field sampling, processing, and a mineral report to determine if Mr. Saltzman discovered "valuable mineral deposits" and thus had valid mining claims. (*Id.* at 4–5). If BLM determined Mr. Saltzman's mineral deposits were not valuable, his claims did not proceed to Phase III. (*Id.*). In Phase III, Mr. Saltzman's claims return to the Court to consider Mr. Saltzman's taking claims on the merits. (*Id.* at 5). This process is in its ninth year.

In October 2015, under its Phase I analysis, BLM found 96 of 103 mining claims were void; Mr. Saltzman's remaining 7 claims proceeded to Phase II. (Def.'s Oct. 30, 2015 Status Report, ECF No. 34). In December 2015, Mr. Saltzman appealed 73 of the 96 Phase I adverse validity determinations to the IBLA. (Def.'s Apr. 21, 2016 Status Report, ECF No. 36). In June 2019, BLM determined the 7 mining claims in Phase II were *void ab initio*; Mr. Saltzman appealed that decision in July 2019 which remains pending today—nearly five years later. (Def.'s Oct. 1, 2019 Status Report, ECF No. 51; Def.'s Mot. to Dismiss at 22 ("For the remaining 7 of 103 mining claims, which the Hearings Division found null and *void ab initio* on June 14, 2019, [Mr. Saltzman's] appeal with the IBLA remains pending.")).[10]

In August 2020, the IBLA affirmed BLM's decision that 3 mining claims were void but set-aside and remanded the other 70 mining claims back to BLM. (Def.'s Oct. 1, 2020 Status Report, ECF No. 57); Jon Saltzman, 195 IBLA 386 (2020). In October 2020, BLM moved for the IBLA to reconsider its decision remanding the 70 mining claims. (Def.'s Oct. 1, 2021 Status Report, ECF No. 61). In September 2023, the IBLA granted the motion for reconsideration and affirmed BLM's determination that those 70 mining claims were void. (Def.'s Oct. 4, 2023 Notice, ECF No. 78); Jon Saltzman, 198 IBLA 203 (2023). As it stands, only Mr. Saltzman's 7 mining claims in Phase II are pending though no additional administrative action is imminent (*Id.*; Def.'s Mot. to Dismiss at 17).

## II.   DISCUSSION

### A. Legal Standards

This Court's jurisdiction is principally governed by the Tucker Act. 28 U.S.C. § 1491. The Tucker Act grants this Court jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) seeking refund for a payment made to the government; and (3) arising from federal constitutional, statutory, or regulatory law mandating payment of money damages by the government. 28 U.S.C. § 1491(a)(1); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). This Court's jurisdiction, therefore, extends to Fifth Amendment takings claims. *Shelden v. United States*, 742 Fed. App'x 496, 500 (Fed. Cir. 2018) (caveating this Court's jurisdiction does not extend to frivolous claims). Although a pro se

---

952 F. Supp. 1448, 1458 (D. Or. 1996) (upholding the IBLA decision pursuant to the arbitrary and capricious standard of the APA), *aff'd*, 139 F.3d 726 (9th Cir. 1998).

[10] At the time of this filing, the Interior's website did not list the IBLA's decision on Mr. Saltzman's appeal. *Chronological Index of Decisions Issued in Calendar Year 2024*, U.S. Dep't of the Interior, https://www.doi.gov/oha/organization/ibla/Finding-IBLA-Decisions/Chronological-Index-of-Decisions/calendar-year-2024 (last visited Apr. 4, 2024).

plaintiff's pleadings are generally held to "less stringent standards" than those of a lawyer, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), leniency cannot be extended to relieve a pro se plaintiff of the jurisdictional burden. *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

When deciding a motion to dismiss under RCFC 12(b)(1), the Court must accept all the undisputed facts asserted in the plaintiff's complaint as true and construe them in the light most favorable to the plaintiff. *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). The Court may also "go outside of the pleadings when ruling on a motion to dismiss under RCFC 12(b)(1) and 'inquire into jurisdictional facts' to determine whether it has jurisdiction." *Barnes v. United States*, No. 23-455, 2024 WL 1336569, *1, n.1 (Fed. Cl. Mar. 28, 2024) (citing *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991), *aff'd in relevant part*, *Martinez v. United States*, 281 F.3d 1376 (Fed. Cir. 2002)). Even if the Court has jurisdiction over the plaintiff's claims, the plaintiff must also establish standing. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) (noting this Court applies the same standing requirements as an Article III court). To establish standing, the plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1354 (Fed. Cir. 2018) (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016)).

Further, RCFC 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed, but early enough to prevent trial delays. RCFC 12(c). Judgment on the pleadings is appropriate when "there are no material facts in dispute and the party is entitled to judgment as a matter of law." *Forest Laboratories, Inc. v. United States*, 476 F.3d 877, 881 (Fed. Cir. 2007) (citing *N.Z. Lamb Co. v. United States*, 40 F.3d 377, 380 (Fed. Cir. 1994)). The Court applies the same standard of review as when it considers a RCFC 12(b)(6) motion. *Jordan v. United States*, 119 Fed. Cl. 694, 697 (2015). In other words, a "motion to dismiss under RCFC 12(b)(6) or 12(c) will be granted if the facts alleged in the complaint do not entitle the plaintiff to a legal remedy." *Id.*; *Taddeo v. United States*, No. 23-399, 2024 WL 1209233, *2 (Fed. Cl. Mar. 21, 2024). Therefore, the complaint must contain sufficient facts to plausibly establish that the defendant is liable, if accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of cause of action supported by mere conclusory statements, do not suffice." *Id.* Furthermore, "[i]f, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." RCFC 12(d). Under RCFC 56, the Court is required to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. RCFC 56.

### B. Analysis

Mr. Saltzman claims that the 2012 CAA constituted a Fifth Amendment taking because the fee structure change—attaching the $140 fee "per 20-acre" rather than "per claim"—increased his fees by 800 percent. (Compl. at 7 (calculating fee payment increase from $14,420 per year to $115,360 per year)). Mr. Saltzman argues the fee increase created a "staggering

financial burden" resulting in his failure to pay maintenance fees on 75 of his 103 mining claims. (*Id.* at 8–9). Mr. Saltzman therefore argues the result of the 2012 CAA constitutes a Fifth Amendment taking of his placer mining claims because he lost the unpatented placer claims and "was not compensated at all." (*Id.* at 11).[11] Mr. Saltzman seeks $219,733,270 in compensatory damages. (*Id.* at 14 (seeking $13,333.33 per acre for 16,480 total acres)).

The United States moves to dismiss Mr. Saltzman's claim. (Def's Mot. to Dismiss at 20–30). First, the United States argues the Court lacks jurisdiction to hear Mr. Saltzman's claim because he does not have a cognizable property interest in his mining claims. (*Id.* at 20–22). Regarding 23 of his mining claims, the United States contends that Mr. Saltzman received a final determination—which he did not appeal—that he had no valid property interest. (*Id.*). Similarly, the United States argues Mr. Saltzman has no cognizable property interest in 73 of his mining claims because Interior determined his claims were null and void after extensive administrative proceedings. (*Id.* at 22). Therefore, the United States argues that Mr. Saltzman lacks standing to bring a cause of action for those 96 mining claims. (*Id.* at 21). The United States also argues Mr. Saltzman "currently holds no valid property interest" for the remaining 7 claims pending before the IBLA because BLM found them "null and *void ab initio*." (*Id.* at 22). Second, the United States argues Mr. Saltzman failed to allege facts that, if true, entitle him to relief regarding all his mining claims. (*Id.* at 22–30). Specifically, the United States argues the Court should apply the *Kunkes* framework. (*Id.* at 23–25). Under *Kunkes*, the United States continues that the maintenance fee serves a legitimate public purpose, (*id.* at 26–29), and Mr. Saltzman's allegations do not show that fee was unreasonable. (*Id.* at 29–33). The Court agrees with the United States.

As an initial matter, to bring a Fifth Amendment takings claim, the plaintiff must "'identify[ ] a valid property interest' under the Fifth Amendment and show a 'governmental action [that] amounted to a compensable taking of that property interest.'" *Shelden*, 742 Fed. App'x at 500 (quoting *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212–13 (Fed. Cir. 2005)). Therefore, Mr. Saltzman must first show that he had a valid property interest in the unpatented placer mining claims. *See id.* Notably, BLM has the authority to determine whether mining claims are enforceable property interests. *Best*, 371 U.S. at 337. Therefore, the purpose of the Court's prolonged stay was for BLM to determine whether Mr. Saltzman had a valid property interest. (*See generally* Order Granting Stay). In other words, the Court stayed this case because

---

[11] Mr. Saltzman repeats these claims in his response. (*See generally* Pl.'s Resp.). Mr. Saltzman also airs his grievances with BLM's administrative review process, (*id.* at 7, 12–13, 18), and raises new allegations about BLM not approving his Plan of Operation. (*Id.* at 7, 22). Although the Court sympathizes with Mr. Saltzman, this Court is not the proper venue for such administrative complaints. *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 313 (2011) (holding the Court "has no general power to provide equitable relief against the Government or its officers."). Similarly, the time to raise new allegations against BLM or amend his Complaint has passed. 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."); *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1333 (Fed. Cir. 2000) ("Futility of the proposed amendment is an adequate reason to deny leave to amend."). Accordingly, the Court disregards new arguments raised in Mr. Saltzman's response.

if BLM found there were no discoverable valuable minerals, Mr. Saltzman's taking claims would be rendered "null and void," and must be dismissed unless a federal district court or appellate court reverses BLM's determination. (*Id.* (citing *Aulston v. United States*, 823 F.2d 510 (Fed. Cir. 1987) (finding this Court does not have jurisdiction to review Interior decisions until the final agency decision and that judicial review of the agency's final decision is vested in the district courts, not the Court of Federal Claims))).[12] Alternatively, if BLM found any of the mining claims were valid, the Court could proceed to Phase III and review Mr. Saltzman's takings claim as to those specific mining claims under *Kunkes*. (*Id.*); 78 F.3d at 1551–56.

As stated above, the IBLA determined that 96 of Mr. Saltzman's 103 mining claims were invalid. (Def.'s Oct. 4, 2023 Notice); Jon Saltzman, 198 IBLA 203 (2023) ("we conclude that the mining claims . . . were abandoned"). This decision constitutes final agency action, despite Mr. Saltzman's motion for reconsideration. 43 C.F.R. § 4.403(b)(4) ("A motion for reconsideration will not stay the effective or affect the finality of the Board's decision unless so ordered by the Board for good cause."); (Pl.'s Resp. at 6 (notifying the Court that Mr. Saltzman moved for reconsideration with the IBLA on October 23, 2023)). Therefore, the Court agrees with the United States that the Court lacks jurisdiction and Mr. Saltzman lacks standing to bring a takings claim for those 96 mining claims because Mr. Saltzman has no valid property interest. *See* RCFC 12(b)(1). Accordingly, the Court dismisses Mr. Saltzman's Fifth Amendment taking claim as to the 96 mining claims.

Regarding Mr. Saltzman's 7 remaining mining claims, BLM's (and the IBLA's) review under the Mining Law stretched years beyond what the Court originally contemplated. (Order Granting Stay at 3). In the Court's 2015 Order, it noted "BLM estimates that it will take approximately 3-6 years to finish review of Mr. Saltzman's 103 claims" but that "the [C]ourt expects BLM to decide the validity [of claims] on a rolling basis." (*Id.*). However, almost 9 years have passed and that review is incomplete. Mr. Saltzman's appeal before the IBLA was fully briefed in October 2019—almost 5 years ago—but there has been no further movement. (Def.'s Ex. 1 ("Myer's Decl.") at 17, ECF No. 80-1). Notably, a Supervisory Land Law Examiner at the BLM Arizona State Office, informed the Court that "[a]ccording to BLM's electronic databases, *all of Mr. Saltzman's 103 claims at issue in this are closed*." (Myer's Decl. at ¶6 (emphasis added)). She continued that in BLM's case recordation system, "closed" indicates that the mining claim is "null and void or otherwise forfeited and the opportunity to file an administrative appeal has expired." (*Id.*). Due to the lack of administrative action and BLM's representation that *all* of Mr. Saltzman's claims are closed on BLM's database, the Court understands that BLM

---

[12] Importantly, the Court raised potential proceedings in district court multiple times with the parties, but Mr. Saltzman has not challenged Interior's decisions in district court. (Mar. 7, 2023 Tr. at 18:4–7 (The Court: "And ultimately, if [Mr. Saltzman] disagrees with BLM's determination, his remedy lies in the U.S. District Court, correct, not here?" The United States: "Yes, Your Honor."); Sept. 11, 2023 Tr. at 26:21–27:2 (the Court: "There may very well be additional relief that Mr. Saltzman may choose to seek in the U.S. District Courts that are not something within the jurisdiction of this particular court, but that's a matter for Mr. Saltzman to make that determination, and I'll leave that to his decision to do so."); *see also Jon Saltzman*, PACER, https://pcl.uscourts.gov/pcl/pages/search/results/parties.jsf?sid=b19c8842eeda44d6b23e d5608646dde3 (last visited Apr. 9, 2024).

considers those remaining 7 claims to be null and void. (*Id.*). Per that understanding, the Court again lacks jurisdiction, and Mr. Saltzman lacks standing to bring a takings claim on those 7 mining claims because Mr. Saltzman has no valid property interest.

Even if the IBLA issued a decision and found that Mr. Saltzman had valid property interests, Mr. Saltzman's takings claim for all 103 mining claims must still be dismissed by the Court. As stated in the Order Denying Dismissal, this case turns on the *Kunkes* framework or whether Mr. Saltzman's unpatented mining claims are "subject to 'objectively reasonable' fees" and whether those fees furthered a "legitimate public purpose." *Saltzman*, 2014 WL 4050181, at *3–4 (discussing *Kunkes*, 78 F.3d at 1551–56); (*see* Def's Mot. to Dismiss at 23–25). In *Kunkes*, unpatented mining claim holders—who did not pay the 1993 Maintenance Fee Statute's annual fee—challenged the forfeiture of their mining claims as an uncompensated taking. *See generally Kunkes*, 78 F.3d at 1549. However, the Federal Circuit determined the 1993 Maintenance Fee Statute did not constitute a taking by applying a two-prong framework: whether the fee served a legitimate public purpose and whether the fee amount was objectively reasonable. *Kunkes*, 78 F.3d at 1551–56.

First, the Court notes that Mr. Saltzman's challenge to the 2012 CAA's maintenance fee is not identical to *Kunkes*. In *Kunkes*, the appellants contested the existence of an annual maintenance fee, *id.*, whereas Mr. Saltzman challenges the 2012 amendment where each fee applies "per 20-acre" rather than "per claim." (Compl. at 7); 30 U.S.C. § 28f(a)(2). Nonetheless, the *Kunkes* framework is still applicable because Mr. Saltzman forfeited his unpatented placer mining claim by failing to pay the requisite fee and argues this constituted a Fifth Amendment taking. (*See generally* Compl). Therefore, Mr. Saltzman's claim is sufficiently analogous to *Kunkes*, *see* 78 F.3d at 1551–56; the Court will apply that framework.

Fundamentally, Mr. Saltzman is challenging congressional action that closed a statutory loophole and his inability to no longer exploit that loophole. (*See generally* Compl). It is well-established that Congress has the power to close statutory loopholes. *E.g., Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 439 (2007) ("the 'loophole' is properly left for Congress to consider, and to close if it finds such action is warranted."). Furthermore, BLM explicitly notified the public that the fee adjustment was intended "so that placer mining claims containing more acreage will bear a *proportional amount* of the administrative costs associated with the administration of all claims and sites[.]" 77 Fed. Reg. 44155, 44156 (emphasis added). The Court, like the Federal Circuit in *Kunkes*, accepts that the purpose of maintenance fees is to "rid[] federal lands of stale mining claims," provide land managers with updated information on mining claim holders, and aid administration of the sites. *Kunkes*, 78 F.3d at 1554; *see also* Administration of Mining Claims and Sites, 77 Fed. Reg. 44,155[13] ("Congress appropriates money to the BLM from the fund to pay for the administration of the Mining Law program, which includes mining claim recording and fee collection, processing grandfathered patent

---

[13] Mr. Saltzman repeatedly referenced the Federal Register Notice in his Complaint, (Compl. at 1, 6, 12), and the United States quoted it in its Motion. (Def's Mot. to Dismiss at 26–27). Therefore, the Court may consider the language in that Notice. *Bell/Heery v. United States*, 106 Fed. Cl. 300, 307 (2012) (looking to "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record."), *aff'd* 739 F.3d 1324 (2014).

applications, processing applications for plans of operations, inspecting operations and enforcing the regulations."). It follows that amending the fee structure to apply equally to all mining claims furthers this legitimate purpose. *See id.*; 30 U.S.C. § 28f(a)(2). Therefore, the Court finds that the 2012 CAA maintenance fees serve a legitimate public purpose under the *Kunkes* framework.

Second, the Court turns to whether the maintenance fee was objectively reasonable. *Kunkes*, 78 F.3d at 1555–56 (rejecting subjective test "unworkable" when too many variables, such as a child's college tuition or car payments, would over-complicate the analysis). To determine if the fee was objectively reasonable, the Court must compare the fee amount to the value of assessment work and appraised value of the mineral claims. *Id.* at 1556. *Kunkes* remains instructive; there, the Court determined that a $100 fee (totaling approximately $115,000 for 573 claims over two years) was objectively reasonable and *de minimis* when measured against the claimant's alleged mineral value of more than $80 million. *Kunkes*, 32 Fed. Cl. at 255; 78 F.3d at 1555–56; (*see also* Def.'s Mot. to Dismiss at 29 ("The Federal Circuit upheld the trial court's determination that the challenged fee of roughly $115,000 was reasonable, in part because it was a small imposition compared to the alleged value of the property of at least $80 million—which calculates to approximately 0.14 percent, or 14 tenths of a percent of the alleged value of the mining claims.")).

Here, Mr. Saltzman's requisite maintenance fee is objectively reasonable. Because the Court reads Mr. Saltzman's pro se pleadings under "less stringent standards," *Haines*, 404 U.S. at 520–21, it accepts Mr. Saltzman's proposed figures. It is undisputed that Mr. Saltzman was required to pay a total of $115,360 in maintenance fees at $140 per 20-acres. (Compl. at 6–7; Def.'s Mot. to Dismiss at 29–30); *see also* 30 U.S.C. § 28f(a)(2). Mr. Saltzman alleges that each acre is worth $13,333; therefore, by Mr. Saltzman's own calculations each 20-acre plot is allegedly worth $266,660. (Compl. at 6–7). Based on Mr. Saltzman's own valuation, his 103 mining claims were worth $219,733,270. (*Id.* at 6–7, 14 ("$13,333.33 per acre times 16,480 acres in the amount of [$219,733,270].")). Considering *Kunkes*, it is objectively reasonable for Mr. Saltzman to pay $115,360 annually or 0.0005 percent, if the alleged value of the property is, as Saltzman alleges and which the Court must accept as true, approximately $219,733,270. *Compare* 78 F.3d at 1552, 1556, *with* (Compl. at 6–7, 14); *see also Haines*, 404 U.S. at 520–21. Accordingly, the 2012 CAA's maintenance fee was objectively reasonable. For the foregoing reasons, Mr. Saltzman fails to show the 2012 CAA's fee restructuring served an illegitimate public purpose and was objectively unreasonable, therefore, his Complaint must be dismissed pursuant to RCFC 12(c).

### III.    CONCLUSION

For the stated reasons, Mr. Saltzman's Complaint, (ECF No. 1), must be dismissed for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. Therefore, The United States' Motion to Dismiss, (ECF No. 80), is **GRANTED**.[14]

The Clerk **SHALL** enter judgment accordingly. The Clerk is directed to **REJECT** any future submissions in this case unless they comply with this Court's rules regarding post-dismissal submissions.

**IT IS SO ORDERED.**

*David A. Tapp*
_____
DAVID A. TAPP, Judge

_____

[14] As discussed above, the Court **CONSTRUES** Mr. Saltzman's Cross-Motion, (ECF No. 83), as his response to the United States' Motion to Dismiss. Further, because Mr. Saltzman filed the motion to stay dismissal, (ECF No. 79), and motion to withdraw that motion, (ECF No. 82), prior to his construed response, the Court hereby **DENIES AS MOOT** both of Mr. Saltzman's filings. (ECF Nos. 79, 82).